UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| BURTON K. LANDMAN, | ) | Civ.  05-4134-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER REVERSING AND |
| | ) | REMANDING DECISION |
| JO ANNE B. BARNHART, | ) | DENYING BENEFITS |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Burton Kenneth Landman, moves for reversal of the

Commissioner of Social Security's (Commissioner) decision denying his

application for disability insurance benefits under Title II of the Social

Security Act.  Defendant opposes the motion.  The court reverses and

remands the Commissioner's decision.

**PROCEDURAL BACKGROUND**

Landman submitted an application for disability benefits.  AR 48-50.[1]

Landman asserted a disability onset date of June 15, 1996.  AR 48.

Landman's disability insurance coverage terminated on December 31, 2001.

AR 19.

---

[1] All citations to "AR" refer to the appropriate page of the Administrative
Record found at Docket 28.

The Commissioner initially denied Landman's application, and again on reconsideration.  Landman requested a hearing before an Administrative Law Judge (ALJ).  AR 47.  Landman waived his personal appearance at the hearing, and ALJ Robert Maxwell denied Landman's application based upon the evidence in the record.  AR 27-28.  After considering additional evidence submitted by Landman, the Appeals Council denied Landman's request for review.  AR 7-8.  Accordingly, the ALJ's decision is the "final decision" under 42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

Landman was born in 1957 in Bethel, Alaska.  He originally dropped out of high school at the age of seventeen and got married.  AR 412.  In January of 1976, Landman joined the Air Force and obtained his high school diploma.  AR 261, 411.  While in the Air Force, Landman worked as an electronics technician.  AR 76.  In January 1983, Landman divorced his wife. AR 413.  He was discharged from the Air Force in September of 1983 for sexually molesting a child.  AR 414.

In September of 1983, Landman married his second wife and moved to Rapid City, South Dakota.   Between April of 1984, and January of 1994, Landman managed a movie theater.  AR 76.  Landman also finished three years of college between 1985 and 1991 while attending the South Dakota School of Mines & Technology.  AR 81, 412.

2

In 1994, after separating from his second wife, Landman moved to St. Paul, Minnesota, and began working as newspaper distribution manager.  AR 76.

In March of 1995, Landman was treated for bronchitis.  AR 152. Landman indicated that he had quit smoking five years previously and had gained one-hundred pounds.

In August of 1996, Landman was seen at the Duluth, Minnesota, emergency room for arm pain.  AR 153.  Landman reported that for the previous four days he had experienced arm discomfort above the elbows in both of his arms and occasionally in his face.  Landman also indicated that he was not experiencing any shortness of breath.  The emergency room doctor stated that the etiology of the arm discomfort was uncertain.

In June of 1996, Landman quit his job as newspaper distribution manager after falling and injuring both of his wrists.  AR 75.  Landman reported experiencing greater respiratory difficulties after quitting his job.  AR 84.

Some time after quitting his job, Landman was extradited to South Dakota to face criminal charges for molestation of his stepdaughter from his second marriage.  Landman was convicted of four counts of sexual abuse and

sentenced to sixty years in state prison.  AR 415.  Landman entered the state penitentiary in June of 1997.  AR 88.  He is still incarcerated.[2]

Upon admission to the state penitentiary, Landman was evaluated and only diagnosed as having dandruff.  AR 228.  Just over a month later, Landman sought medical treatment for a rash on his forearms.  AR 227.  The records do not indicate that he had any other complaints.

Between September of 1998, and January of 2000, Landman only sought medical treatment for gastrointestinal pain and acid peptic disorder.  AR 217-26.  He saw Mr. Zike, a physician's assistant, who prescribed Tagament.  Landman indicated this treatment improved his symptoms.  AR 224.  Mr. Zike described Landman as moderately obese, and Landman's weight ranged from 250 to 257 pounds.

In July of 1999, the VA awarded Landman a 30 percent service connection disability for chronic obstructive pulmonary disorder (COPD).  In reaching this decision, the VA relied in part on an examination performed by Dr. Stephen Wilbur, a VA physician, on November 23, 1999.  During this examination, Landman was subjected to pulmonary tests.  AR 166-172.  Based on these tests, Dr. Wilbur diagnosed Landman with COPD partially

---

[2] Although Landman's incarceration prevents him from receiving benefits for any month in which he is incarcerated, his children may be able to receive benefits.  See 42 U.S.C. § 402(x); 20 C.F.R. § 404.468.

reversible with bronchodilator.  Dr. Wilbur indicated that Landman did not suffer from chronic bronchitis or pulmonary emphysema.

The VA also relied on a statement written by Dr. Larry A. Weitzenkamp on June 25, 1998.  In this statement, Dr. Weitzenkamp indicated that he treated Landman between July of 1984 and April of 1991 while Landman resided in Rapid City, South Dakota, but that the medical records relating to these visits were unavailable.  AR 190-91.  Dr. Weitzenkamp indicated that Landman suffered from bronchitis and hearing loss associated with constant tinnitus.  Dr. Weitzenkamp also stated that Landman was having sleeping difficulties, which were probably caused by his tinnitus and bronchitis.

Dr. Weitzenkamp completed additional written statements on August 29, 1999, February 10, 2000, May 12, 2000, August 21, 2001, and October 2, 2001.  AR 184-89.  In his May 12, 2000, statement, Dr. Weitzenkamp indicated that Landman's tinnitus caused not only a sleep disorder but also "related psychological and cognitive problems, and difficulty studying."  AR 186.  Then, in his October 2, 2001, statement, Dr. Weitzenkamp stated for the first time that Landman is suffering from post traumatic stress disorder (PTSD) along with anxiety disorder and depression.  AR 184.  Dr. Weitzenkamp indicated that these disorders cause his sleeping problems, which in turn cause psychological and cognitive problems that are totally disabling.  AR 184.

5

On January 24, 2000, Landman complained to Zike about chronic bronchitis.  AR 216.  Zike started treating him for chronic COPD by prescribing Chlor-Trimeton.

On April 12, 2000, Landman returned to Zike for continued treatment for his chronic COPD and acid peptic disorder.  AR 215.  Although Landman indicated that he was getting along well with his COPD, diagnostic tests indicated otherwise.  Zike prescribed Landman an inhaler for his COPD.

On August 30, 2000, Dr. Lalith Misra, reviewed Dr. Weitzenkamp's statement dated May 12, 2000, in an effort to determine whether Landman qualified for VA disability benefits.  Dr. Misra also reviewed Dr. Wibur's examination of Landman.  Based on these records, Dr. Misra opined that "it is unlikely that [Landman] experienced severe cognitive defects."  AR 165.

On October 10, 2000, the VA waived Landman's future payment of life insurance premiums.  AR 91.  The VA found that Landman was totally disabled since June 1, 2000.

On November 11, 2000, Landman reported experiencing episodes of vertigo.  AR 211.  Landman was diagnosed with Meniére disease and treated with Antivert.

On April 12, 2001, a state agency physician reviewed Landman's medical records and completed a Physical Residual Functional Capacity Assessment.  AR 176-83.  The agency physician determined Landman had

6

physical limitations and that "[e]xaggerated symptoms and non-physiological test results obscure the view of [Landman]'s actual status."  AR 181.

On November 20, 2001, a second state agency physician reviewed Landman's medical records and completed a Physical Residual Functional Capacity Assessment.  AR 236-43.  The physician stated that Landman needed to avoid climbing ladders, ropes, or scaffolds, working at heights, and concentrated exposure to fumes, odors, gases, or poor ventilation.  The physician stated "medical records do not indicate a severe problem with any allegation."  AR 241.

On December 23, 2003, a VA physician examined Landman.  The physician diagnosed Landman with COPD; seborrheic dermatitis; degenerative disc disorder, lumbosacral spine; degenerative joint disease, cervical spine. AR 422.

On January 20, 2004, psychiatrist Mike McGrath, M.D., completed a psychological evaluation of Landman in conjunction with Landman's application for VA disability benefits.  AR 408.  Dr. McGrath diagnosed Landman with pedophilia as well as a somatoform disorder versus hypochondriasis.  AR 10.[3]

---

[3] Although completed after the ALJ's decision, Landman submitted this psychological evaluation to the Appeals Council, and the Appeals Council considered it in denying Landman's request for review.  AR 7-8.  Because the Appeals Council considered this evidence, the court includes it as a part of the administrative record and must consider it in determining whether the ALJ's

## ALJ DECISION

In his decision denying Landman's application for benefits, the ALJ applied the sequential five-step evaluation process.[4]  At step one, the ALJ found that Landman has not engaged in substantial gainful activity since June of 1996.  AR 20.  At step two, the ALJ found that Landman suffered from two severe impairments: COPD and feelings of dizziness.  AR 27.  The ALJ explicitly found that Landman was not experiencing "any psychological or cognitive difficulties attributable to any underlying mental or physical impairment prior to December 31, 2001."  AR 24.  At step three, the ALJ found that the severity of Landman's impairments, singly or in combination, did not rise to the level of a presumptively disabling impairment as listed in the regulations.  AR 27.  Next, the ALJ determined that Landman's residual function capacity (RFC).  The ALJ found that Landman's impairments

————————————

decision is supported by substantial evidence of the record as a whole.  See Flynn v. Chater, 107 F.3d 617, 621 (8th Cir. 1997).

    [4] The five-step sequential evaluation process as outlined by the Eighth Circuit is: (1) whether the claimant is presently engaged in a "substantial gainful activity;" (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.  Baker v. Apfel, 159 F.3d 1140, 1143-44 (8th Cir. 1998).

prevented him from working in unclean air environments or at heights.  AR 27.  Based on these limitations, the ALJ concluded that Landman could perform his past relevant work as a movie theater manager and as a newspaper circulation manager.  AR 27.  The ALJ thus terminated his evaluation at step four and found that Landman was not entitled to disability benefits.

## STANDARD OF REVIEW

The decision of the ALJ must be upheld if it is supported by substantial evidence in the record as a whole.  See 42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006).  Substantial evidence is less than a preponderance but enough evidence that a reasonable mind might find it adequate to support the conclusion.  See Baker v. Barnhart, 457 F.3d 882, 892 (8th Cir. 2006); see also McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000); Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Review by this court extends beyond a limited search for the existence of evidence supporting the Commissioner's decision to include giving consideration to evidence in the record which fairly detracts from the decision.  See Maresh v. Barnhart, 438 F.3d 897, 898 (8th Cir. 2006); Craig v. Apfel, 212 F.3d 433, 435 (8th Cir. 2000).

The court's role under section 405(g) is to determine whether there is substantial evidence in the record as a whole to support the decision of the

Commissioner and not to re-weigh the evidence.  See Vester v. Barnhart, 416 F.3d 886, 889 (8th Cir. 2005); Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005).  Furthermore, a reviewing court may not reverse the Commissioner's decision "'merely because substantial evidence would have supported an opposite decision.'"  Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)); see also Eichelberger v. Barnhart, 390 F.3d 584, 589 (8th Cir. 2004).  The court must review the Commissioner's decision to determine if an error of law has been committed.  See Olson ex rel. Estate of Olson v. Apfel, 170 F.3d 820, 822 (8th Cir. 1999); Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992).  Issues of law are reviewed de novo with deference given to the Commissioner's construction of the Social Security Act.  See Smith, 982 F.2d at 311; see also Olson ex rel. Estate of Olson, 170 F.3d at 824.  If the ALJ's decision is supported by substantial evidence, then this court cannot reverse the decision of the ALJ even if the court would have decided it differently.  See Baker, 457 F.3d at 892.

## DISCUSSION

Landman asserts six arguments for reversal of the Commissioner's decision: (1) the ALJ failed to develop the record;  (2) the ALJ erred in finding that Landman was not credible; (3) the ALJ failed to employ the special technique used to evaluate mental impairments; (4) the Appeals Council erred

10

in refusing to remand; (5) the ALJ erred in determining Landman's RFC; and (6) the ALJ failed to consider the VA's disability determination.  For the reasons discussed below, the court reverses and remands the Commissioner's decision.

## I.    The ALJ Failed to Develop the Record

Landman argues that the ALJ's failure to develop evidence of Landman's mental impairments warrants reversal.  Specifically, Landman argues that the ALJ should have ordered a consultative psychological evaluation.

The ALJ has a duty to fully and fairly develop the record even when the claimant is represented by counsel.  See Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004).  This duty arises because "[a]dministrative hearings are not adversarial hearings."  Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002).  "'[T]he goals of the [Commissioner] and the advocates should be the same:  that deserving claimants who apply for benefits receive justice.'"  Battles v. Shalala, 36 F.3d 43, 44 (8th Cir. 1994) (quoting Sears v. Bowen, 840 F.2d 394, 402 (7th Cir. 1988)) (first alteration in original).  An ALJ only has a duty, however, to investigate mental impairments listed in the claimant's application for benefits or disclosed at the hearing as a basis for disability.  See Brockman v. Sullivan, 987 F.2d 1344, 1348 (8th Cir. 1993).

11

Sometimes an ALJ will order a consultative evaluation to fulfill his or her duty to fully and fairly develop the record.  An ALJ is empowered to obtain a consultative evaluation when the claimant's medical records provide insufficient information.  See 20 C.F.R. § 416.917.  Failure to order a consultative evaluation only warrants reversal, however, when "'such an evaluation is necessary for [the ALJ] to make an informed decision.'"  Boyd v. Sullivan, 960 F.2d 733, 736 (8th Cir. 1992) (quoting Dozier v. Heckler, 754 F.2d 274, 276 (8th Cir. 1985)).  A consultative evaluation is unnecessary when there is substantial evidence in the record from which the ALJ can make an informed decision.  See Haley v. Massanari, 258 F.3d 742, 749 (8th Cir. 2001).

As a preliminary matter, the court must determine for which of Landman's mental impairments the ALJ had an obligation to develop the record.  The administrative record indicates Landman may have suffered from several mental impairments: depression, anxiety, PTSD, sleep disorder with related psychological and cognitive difficulties, adjustment disorder, pedophilia, somatoform disorder, and hypochondriasis. Landman did not, however, include any of these mental impairments in his original application for disability benefits.  AR 48-51, 75.  Further, Landman only listed depression, anxiety, and PTSD as mental impairments afflicting him when he demanded a hearing before the ALJ.  AR 44-45, 125.  Moreover, Landman did not raise additional mental limitations at the hearing.  Thus, the ALJ's

12

obligation to develop the record was limited to depression, anxiety, and PTSD because those were the only mental impairments listed in Landman's application for benefits or raised at the administrative hearing.  See Brockman, 987 F.2d at 1348; see also Anderson v. Barnhart, 344 F.3d 809, 814 (8th Cir. 2003).

The court finds that the ALJ fulfilled his duty to adequately develop the record because there was substantial evidence in the record from which the ALJ could determine that depression, anxiety, and PTSD did not qualify as severe impairments before December 31, 2001, when Landman's insured status expired.  See Haley, 258 F.3d at 749.  As noted above, Landman did not include mental limitations in his initial request for disability benefits.  Nor did Landman seek treatment for anxiety, depression, or PTSD while he was enlisted in the Air Force.  In fact, the VA noted that Landman's military medical records contained no evidence that he ever complained of or sought treatment for PTSD or depression.  AR 247.  Following discharge from the Air Force, Landman worked until June of 1996, and there is nothing indicating that his mental health limited his ability to work.  Further, none of Landman's medical records from the time of his discharge from the Air Force and his incarceration in July of 1997 indicate that Landman sought treatment for anxiety, depression, or PTSD.  Nor did the medical records from the time Landman was incarcerated until at least December 31, 2001, when his

insured status expired.  Finally, the VA's psychological evaluation, which was performed on January 20, 2004, indicated that Landman was not suffering from PTSD, and that he was exaggerating his symptoms.  AR 417.

The only evidence that indicated that Landman suffered from anxiety, depression, or PTSD is Dr. Weitzenkamp's statement.  Although Dr. Weitzenkamp, who apparently treated Landman before he was incarcerated, indicated that Landman was suffering from sleep disorders and PTSD, the ALJ gave no weight to Dr. Weitzenkamp's statement.  AR 24, 184.  Landman does not contest this determination, and thus, the court also disregards Dr. Weitzenkamp's statement.

In short, the court finds that there is virtually no evidence indicating that Landman was suffering from anxiety, depression, or PTSD, or that these conditions significantly limited Landman's ability to perform basic work activities.  Thus, the record contained substantial evidence from which the ALJ could conclude that Landman's anxiety, depression, and PTSD did not qualify as severe impairments.  See 20 C.F.R. § 404.1520(c).  Accordingly, the ALJ complied with his duty to fully and fairly develop the record regarding Landman's mental impairments, and the ALJ did not err in refusing to order a

psychological consultative evaluation.  See Warburton v. Apfel, 188 F.3d 1047, 1051 (8th Cir. 1999).[5]

## II.   The ALJ Erred in Finding that Landman Was Not Credible

Next, Landman argues that the ALJ erred in failing to consider his diagnosis of a somatoform disorder[6] in determining that Landman's subjective complaints were not credible.  The ALJ found that Landman's statements regarding his subjective complaints, including pain, were "exaggerated, not fully credible, and not substantially supported by medical evidence and opinion in the record considered in its entirety."  AR 27.  Landman argues that the ALJ could not rely on these discrepancies for discrediting his subject complaints because they are consistent with someone suffering from a somatoform disorder.

_____

[5] Landman also argues that the court should impose a "heightened duty" on the ALJ to develop the record because Landman waived the hearing. Landman acknowledges that the heightened duty typically applies whenever the claimant appears pro se, and that Landman was represented by counsel. Nevertheless, Landman argues that the waiver of right to appear at the hearing also should trigger a heightened duty to develop the record.  Landman cites no authority, and the court can find none, to support this argument.  Thus, the court refrains from imposing a heightened duty on the ALJ in this case.  Cf. King v. Comm'r of Soc. Sec. Admin., No. Civ. 99-971-J0, 2000 WL 633561, at *1-2 (D. Or. May 11, 2000) (applying normal burden to develop record even though claimant waived hearing); Collado v. Apfel, 63 F. Supp. 2d 152, 158 (D.P.R. 1999) (same).

[6] "A somatoform disorder involves '[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms.'" Jones v. Callahan, 122 F.3d 1148, 1152 (8th Cir. 1997) (quoting 20 C.F.R. pt. 404 subpt. P app. 1 pt. A § 12.07)) (alteration in original).

A somatoform disorder "causes [claimants] to believe that [their] physical ailments are more serious than the clinical data would suggest." Easter v. Bowen, 867 F.2d 1128, 1129 (8th Cir. 1989).  Thus, when discounting the subjective complaints of a claimant suffering from a somatoform disorder, the ALJ should consider that the claimant may be experiencing pain more severe than supported by the objective medical data. See id. at 1130 ("Any shortcomings in the objective medical data that support [the claimant's] alleged physical ailments are irrelevant since her primary disorder, as clinically diagnosed, causes her to exaggerate her physical problems in her mind beyond what the medical data indicate.").  "In cases involving somatoform disorders, an ALJ may not dismiss a claimant's subjective experiences without an express finding on the record that his testimony is not credible." Jones v. Callahan, 122 F.3d 1148, 1152 (8th Cir. 1997).

Here, the court finds that the ALJ erred in discrediting Landman's subjective complaints.  As indicated, Landman has been diagnosed with a somatoform disorder, and thus, the court would expect his subjective complaints to appear exaggerated and unsupported by the medical evidence. See Easter, 867 F.2d at 1130.  The ALJ could only disregard Landman's subjective complaints if the ALJ explicitly found that Landman's testimony was not credible.  See Jones, 122 F.3d at 1152.  Landman did not testify,

16

however, because he waived the evidentiary hearing.  Thus, the ALJ needs to

consider the impact of Landman's somatoform disorder in determining the

weight attributable to Landman's subjective complaints, and the court

remands the case to enable this analysis.

**III.   The ALJ Failed to Employ the Special Technique Used to Evaluate Mental Impairments**

Landman argues that the ALJ's failure to employ the technique for

evaluating a mental impairment for adults set forth in 20 C.F.R. § 404.1520a

warrants reversal.  According to the regulations, the Commissioner must

apply the special technique if the claimant has a medically determinable

mental impairment.  20 C.F.R. § 404.1520a(b)(1).  If the claimant has a

medically determinable mental impairment, then the Commissioner must

comply with the procedure contained in § 404.1520a(e).  According to

§ 404.1520(e)(1), a medical or psychological consultant must create and sign a

standard document at the initial and reconsideration stages.  Additionally, at

the hearing stage, the ALJ's written decision "must incorporate the pertinent

findings and conclusions based on the technique."  20 C.F.R.

§ 404.1520a(e)(2).  Failure to follow the § 404.1520a generally warrants

reversal and remand.  See Montgomery v. Shalala, 30 F.3d 98, 100 (8th Cir.

1994); see also Fisher v. Barnhart, No. 4:02CV3212, 2004 WL 228965, at *10

(D. Neb. Feb. 4, 2004).  Remand is not necessary, however, if the ALJ's failure

to employ the technique amounts to harmless error.  See <u>Fountain v. R.R. Ret.</u> <u>Bd.</u>, 88 F.3d 528, 532 (8th Cir. 1996).[7]

Here, defendant acknowledges that the standard form was never created at the initial and reconsideration stages, and that the ALJ did not incorporate the special technique in his written opinion.  Defendant argues, however, that the special technique was unnecessary because the ALJ properly found that Landman was not suffering from a medically determinable mental impairment.  The court disagrees.

The ALJ's finding that Landman was not suffering from a medically determinable mental impairment is not supported by substantial evidence of the record as a whole.  A medically determinable mental impairment is defined in 20 C.F.R. § 404.1508, which provides: "Your impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.  A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."  At a minimum, Dr. McGrath's diagnoses of pedophilia and a somatoform disorder versus hypochondriasis meet this requirement.  AR 416.  Thus, the court finds that the ALJ erred in failing to

---

[7] Although <u>Fountain</u> involved an application for disability annuity benefits under the Railroad Retirement Act, the Eighth Circuit explicitly relied on social security case law.  See <u>Fountain</u>, 88 F.3d at 530.

use the technique contained in § 404.1520a.  Further, because the court is remanding for other reasons, the court refrains from deciding whether this error was harmless.  Instead, on remand, the ALJ should ascertain which of Landman's mental impairments qualify as medically determinable and follow the special technique for those impairments.

**IV.    The Appeals Council Erred in Refusing to Remand**

Landman argues that the Appeals Council erred in failing to remand the case to the ALJ to ascertain the onset date of Landman's somatoform disorder.  Because the court is remanding the case, it refrains from reaching this issue.  On remand, however, the ALJ should determine whether Landman's somatoform disorder made him disabled before his insurance coverage expired on December 31, 2002.  See Grebenick v. Chater, 121 F.3d 1193, 1200 (8th Cir. 1997).

**V.    The ALJ Erred in Determining Landman's RFC**

Landman argues that the ALJ erred when the ALJ concluded that Landman's breathlessness was caused by deconditioning.  Landman also suggests that the ALJ failed to consider Landman's obesity.  Because the court is remanding the case, the court refrains from reaching these issues. The ALJ should, however, consider Landman's arguments on remand.

19

**VI.    The ALJ Failed to Consider the VA's Disability Determination**

Landman argues that the ALJ erred by disregarding the VA's determination that Landman was 30 percent disabled as a result of his COPD. In response, defendant argues that the ALJ acknowledged the VA's disability rating but concluded that he was not bound by that finding.

Although not binding on the ALJ, a disability determination by another government agency is "entitled to some weight and must be considered in the ALJ's decision." Morrison v. Apfel, 146 F.3d 625, 628 (8th Cir. 1998). Mere acknowledgment that the ALJ is not bound by another government agency's disability determination is insufficient. See Fisher, 2004 WL 228965, at *10. Instead, the ALJ must explicitly state the evidentiary weight attributable to the other agency's determination. See Morrison, 146 F.3d at 628. Alternatively, the ALJ can analyze the evidence supporting the agency's disability rating. See Pelkey v. Barnhart, 433 F.3d 575, 579 (8th Cir. 2006).

Here, the court finds that the ALJ erred by failing to attribute any weight to the VA's disability determination. Defendant argues that the ALJ complied with his obligations under Morrison by explicitly acknowledging the VA's disability determination. Defendant's brief concedes, however, that the ALJ simply concluded that "disability determinations by other agencies are not binding." (Docket 34, at 23). This is insufficient. See Fisher, 2004 WL 228965, at *10 (stating ALJ failed to weigh evidence of another agency's

20

disability determination when ALJ's decision stated that the ALJ was not bound by other agency's decision).  Accordingly, the court finds that the ALJ erred, and on remand, the ALJ should explicitly determine what, if any, weight should be attributed to this evidence.

Accordingly, it is hereby

ORDERED that Landman's motion to reverse the decision of the Commissioner (Docket 30) is granted, and the case is remanded to the Commissioner.

Dated September 19, 2006.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE